```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 0 5 DEC 2011
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
                                     :
ETTA GRANATA,                        :
                                     :
                    Plaintiff,       :    11 Civ. 689 (KBF)(KNF)
                                     :
           -v-                       :    MEMORANDUM OPINION &
                                     :           ORDER
DAVID BERSON, DAREMY COURT QUALIFIED :
VENTURES, LLC, DAREMY COURT XIV, INC.,:
FRED MILLER, ERIC RIEDMAN and TRADERS :
COMMERCIAL CAPITAL, LLC,             :
                    Defendants.      :
                                     :
------------------------------------X

KATHERINE B. FORREST, District Judge:

A material misrepresentation or material omission is the sina qua non of a claim under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and of Rule 10b-5 promulgated thereunder. Here, as defendants Fred Miller ("Miller") and Traders Commercial Capital, LLC ("TCC") argue in their Motion to Dismiss Plaintiff Etta Granata's Complaint Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Complaint is devoid of any references to movants' making or failing to make any statements to plaintiff Etta Granata ("Plaintiff"). Indeed, there is no allegation in the Complaint that Miller or TCC said anything to anyone at all. Accordingly, and for the reasons set forth below, this Court dismisses Plaintiff's First Claim for Relief under the Exchange Act.

Since there is nothing on the face of the Complaint setting forth a separate basis for federal jurisdiction over the remaining state law claims, they are dismissed for failure to plead a sufficient predicate for federal jurisdiction.

## BACKGROUND

On January 31, 2011, Plaintiff brought this action alleging securities fraud and various state law claims in connection with her investment in Daremy Court Qualified Ventures, LLC ("Daremy Court"), a private investment fund, founded by defendant David Berson ("Berson"), Plaintiff's alleged accountant and financial advisor.

The below recitation of facts "accept[s] as true all allegations in the complaint and draw[s] all reasonable inferences in favor of the non-moving party." Connecticut v. Am. Elec. Power Co., Inc., 582 F.3d 309, 320 (2d Cir. 2009) (citation omitted); see also Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007).

Plaintiff alleges that in 2002 she sought to transfer and consolidate her 401k from her former employer with her other retirement savings. Compl. ¶¶ 16-17. According to Plaintiff, she approached Berson for advice, based upon their approximately 12-year long accountant-client relationship. Id. ¶¶ 15, 17. Berson recommended that Plaintiff take advantage of an

2

opportunity to invest in Daremy Court, which guaranteed returns of 12 percent annually, and assured Plaintiff that any principal invested in Daremy Court would be "protected from losses, that the investment had no fixed term and that Plaintiff could liquidate her investment at any time." Id. ¶ 18. As Plaintiff alleges, Berson then suggested that Plaintiff not only invest her entire combined retirement savings in Daremy Court, but also additional funds to make the minimum $50,000 investment; and further represented that he made investments of his own in Daremy Court. Id. ¶¶ 19, 21. Plaintiff further alleges that Berson assured Plaintiff that her investment would be safe. Id. ¶ 20. Based upon those representations, Plaintiff alleges that on August 23, 2002, she rolled over to Daremy Court her IRA and 401k in an amount totaling nearly $25,000, id. ¶ 23; and that on October 9, 2002, she made two additional contributions of approximately $18,000 and $25,000, respectively, id. ¶ 24.

The Complaint alleges that at the time Plaintiff made the October 9 contributions, she learned of a second fund, Daremy Court XIV, Inc. Compl. ¶ 25. The existence of that fund only came to light when Plaintiff was apprised that the additional $25,000 contribution was being rolled into Daremy Court XIV. Plaintiff alleges that upon receipt of that information she contacted Berson. Id. Berson explained that tax consequences necessitated the separate investment and assured Plaintiff that

3

Daremy Court XIV afforded the same investment protections as Daremy Court, including the 12 percent annual return--regardless of market performance--and the principal protection.  Id.

Plaintiff alleges that for two years, from 2002 through 2004, she received monthly account statements from Daremy Court showing a 12 percent annualized return, but that in 2004, she contacted Berson to request withdrawal of part of her investment.  Compl. ¶¶ 27, 28, 29.  Berson allegedly informed Plaintiff that there was a three-month waiting period for liquidation, contrary to his prior representations, but regardless, advised her not to withdraw any money because it was not "fiscally prudent" and because she would be prevented from re-investing in Daremy Court or Daremy Court XIV (collectively, the "Funds").  Id. ¶ 27.  Berson counseled Plaintiff to obtain a home equity loan because it would carry a lower interest rate.  Plaintiff followed Berson's advice and obtained a home equity loan, on which she allegedly still makes payments today.  Id.

The Complaint alleges that Plaintiff continued to attempt to liquidate part of her investment:  in 2006, Plaintiff sought to liquidate the $25,000 investment in Daremy Court XIV (and was informed of a three-month waiting period), Compl. ¶ 29, and in 2008, after continuously requesting to liquidate her investments in both Funds, Berson admitted that all of Plaintiff's money was invested with Miller, a hedge fund manager who had, according to

4

Berson, invested all of Plaintiff's money in a company that owned and operated a trading platform, id. ¶ 30. Berson provided a number of facts about the company, but at bottom, told her that Plaintiff could expect her money returned "in a matter of weeks." Id.

Plaintiff alleges that finally, on January 6, 2009, after she had made repeated inquiries into the status of her investments, Berson disclosed that he had turned over Plaintiff's investments to TCC. Compl. ¶ 31. TCC was allegedly a company managed by Miller, who in turn invested that money with SFG Financial Corporation, a company with a trading platform that was supposed to trade in the foreign exchange market. Id. Berson told Plaintiff that within two weeks the platform through which TCC was investing Plaintiff's money would be profitable, and made further representations about Miller and TCC's investments and the timing on the return of her investment. Id. Plaintiff alleges that after repeated calls to Berson regarding the return of her investment, he stopped returning her calls. Id. ¶ 33.

In November 2009, Plaintiff alleges that she attempted to transfer the entirety of her investments out of the Funds to no avail. Id. This action followed.

DISCUSSION

"To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir.2007) ("ATSI") (citation omitted). In other words, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 570 (2007)); see also S. Cherry St., LLC v. Hennessee Group LLC, 573 F.3d 98, 103-04 (2d Cir. 2009) (applying the Iqbal standard in the securities fraud context).

Claims of securities fraud under the Exchange Act are also subject to heightened pleading requirements under Federal Rule of Civil Procedure 9(b). See ECA & Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co., 553 F.3d 187, 196 (2d Cir. 2009). Specifically, the Rule 9(b) "particularity" requirement mandates that a complaint "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." ATSI, 493 F.3d at 99. "Allegations that are conclusory or unsupported by factual assertions are insufficient." Id.

6

To state a claim for securities fraud in violation of Section 10(b) and Rule 10b-5, "plaintiffs must allege that [the defendants] '(1) made misstatements or omissions of material fact; (2) with scienter; (3) in connection with the purchase or sale of securities; (4) upon which plaintiffs relied; and (5) that plaintiffs' reliance was the proximate cause of their injury.'" Lentell v. Merrill Lynch & Co., 396 F.3d 161, 172 (2d Cir. 2005).

As discussed above, for purposes of this motion, the Court accepts as true that Plaintiff lost money in connection with the purchase or sale of a security and that Berson made a variety of statements to Plaintiff that were materially false and misleading. The leap that Plaintiff asks this Court to make is that the statements made by Berson about Miller or TCC can actually be attributed to Miller or TCC. In other words, the Complaint is devoid of allegations that Berson was speaking at the behest of Miller or TCC. See, e.g., Pension of Univ. of Montreal v. Banc of Am., 446 F. Supp. 2d 163, 179 (S.D.N.Y. 2006). It may be that Berson, on his own, without the involvement of Miller or TCC made the alleged statements to Plaintiff. Or, it may be that TCC itself made statements to Berson it knew and intended would be conveyed to Plaintiff. What is clear on the face of the Complaint as it stands today is the total lack of any statements by Miller or TCC to Plaintiff.

7

Under those circumstances, dismissal is warranted. See <u>Wright v. Ernst & Young LLP</u>, 152 F.3d 169, 175 (2d Cir. 1998); see also <u>Lentell</u>, 396 F.3d at 172.

Lacking any statements attributable to Miller or TCC, Plaintiff cannot allege any facts amounting to scienter by Miller or TCC. That, too, is fatal to Plaintiff's claims against them. <u>Tellabs</u>, 551 U.S. at 313.

In an apparent attempt to supplement the allegations in the Complaint, Plaintiff refers to (i) an action brought by the Acting Attorney General of New Jersey against Miller and TCC for violations of New Jersey's blue sky laws; and (ii) a finding of liability against Berson for securities fraud in a wholly unrelated action that previously was before Judge Stephen C. Robinson, <u>Merrill Herman & Sharron Dupler v. David Berson, et al.</u>, No. 07 Civ. 10263 (S.D.N.Y.)(closed Jan. 29, 2010). The law is clear, however, that a plaintiff cannot amend a complaint with information contained in an opposition to a motion to dismiss. <u>In re Livent, Inc. Noteholders Sec. Litig.</u>, 151 F. Supp. 2d 371, 432 (S.D.N.Y. 2001). Thus, the Court does not recognize anything contained in those two publicly filed documents as "factual" allegations that could amend Plaintiff's complaint.

For the foregoing reasons, Plaintiff's First Claim for Relief under Section 10(b) against Miller and TCC is dismissed.

8

This Court declines to exercise supplemental jurisdiction over the remaining state law claims but notes that they also likely would not survive any legal analysis given the lack of allegations against TCC and Miller. Accordingly, it is hereby

ORDERED that defendant Miller and TCC's motion to dismiss the Complaint is GRANTED.

It is FURTHER ORDERED that the Complaint is dismissed without prejudice in its entirety against defendants Miller and TCC.

It is FURTHER ORDERED that any amended complaint setting forth a sufficient basis to allege liability against Miller and TCC must be filed no later than fifteen (15) days from the date of entry of this Memorandum Opinion & Order. Plaintiff's failure to do so within the requisite time frame will result in dismissal of the Complaint against TCC and Miller with prejudice.

The Clerk of the Court is directed to terminate the motion (Dkt. No. 18).

SO ORDERED:

Dated:   New York, New York
         December 5, 2011

_____
KATHERINE B. FORREST
United States District Judge